**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 14, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

DORINDA LAUER,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 18-4046
(D.C. No. 1:17-CV-00089-DBP)
(D. Utah)

_____

### ORDER AND JUDGMENT[*]
_____

Before **LUCERO**, **KELLY**, and **PHILLIPS**, Circuit Judges.
_____

Dorinda Lauer appeals pro se from the district court's order affirming the

Commissioner's decision denying her application for Social Security disability and

Supplemental Security Income (SSI) benefits.  She applied for these benefits in

February 2013, alleging she became disabled on November 9, 2012.  The agency

denied her applications initially and on reconsideration.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

In April 2016 Ms. Lauer testified at a de novo hearing before an administrative law judge (ALJ). In his decision, the ALJ determined Ms. Lauer's severe impairments included lumbar and cervical degenerative disc disease, obesity, major depressive disorder, and generalized anxiety disorder. He found she had the residual functional capacity (RFC)

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can [only] occasionally climb, balance, stoop, kneel, crouch, and crawl. She is limited to work involving three to four step tasks in a work environment free of fast paced production requirements. She must have only simple, work-related decisions, with few, if any, work place changes.

R., Vol. I at 66.

Given this RFC, the ALJ determined Ms. Lauer could not perform any of her past relevant work. But considering her age, education, work experience, and RFC, he found that jobs she could perform existed in significant numbers in the national economy. Representative occupations at the light level she could perform included "Routing," "Office helper," and "Marker." *Id.* at 71. The ALJ therefore concluded she was not disabled within the meaning of the Social Security Act from November 9, 2012 through the date of his decision.[1] The Appeals Council denied

---

[1] The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing process). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *See id.* at 751 n.2. If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains a sufficient RFC to perform work in the national economy, given her age, education, and work experience. *See id.* at 751. The Commissioner denied benefits in this case at step five.

review, making the ALJ's decision the Commissioner's final decision. On review, the district court affirmed the denial of benefits.[2]

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Because Ms. Lauer is pro se, "we liberally construe [her] filings, but we will not act as [her] advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

### 1. Ms. Lauer's Complaint of Headaches

At the ALJ hearing, Ms. Lauer testified she has severe migraines, three to four days a week. The migraines start around 3:00 or 4:00 in the morning and generally end around 11:00 the same morning. But sometimes they can extend until the next evening.

These migraine headaches are reflected in the medical evidence. In a progress note dated July 15, 2014, Ms. Lauer reported she was "getting headaches in the nighttime." R., Vol. 1 at 611. On October 20, 2014, she reported she was "waking up with headaches in the back of her head" and had these "[h]eadaches nearly every day." *Id.* at 615. Her treating physician, Dr. Michael Woolman, remarked that an

---

[2] The parties consented to proceed before a magistrate judge, who issued the final district court decision in this case. *See* 28 U.S.C. § 636(c).

x-ray of her neck showed arthritis, which he stated was "[c]ertainly enough to cause her [headache] symptoms." *Id.*

On November 19, 2014, Ms. Lauer again complained to Dr. Woolman about headaches. He ordered a prescription refill for Hydrocodone-Acetaminophen. *Id.* at 619. On January 18, 2016, Dr. Woolman performed a disability exam, and reported that Ms. Lauer "described daily headaches that turn into what she terms are full flown migraines with visual changes and flashing lights." *Id.* at 587. He included her headaches in his list of diagnoses.

Although Ms. Lauer described her migraine headaches at the hearing, and they are reflected in the medical evidence, the ALJ only mentioned headaches twice in his decision. First, in determining Ms. Lauer's hypertension was not a severe impairment, he stated she "has not shown many of the symptoms of hypertension, such as severe headaches." *Id.* at 64. He did not explain why he concluded she did not show severe headaches. Then, in describing her hearing testimony, he said "[s]he reported she has migraines that cause blurry vision, dizziness, and grogginess." *Id.* at 67. He did not further analyze the effect of her headaches on her ability to work.

In district court, Ms. Lauer argued that the ALJ erred by failing to consider her headaches in assessing her residual functional capacity (RFC). She mentions headaches only occasionally in her appellate briefing. Ordinarily we consider only those issues that a claimant has adequately presented for our review. *See Allman v. Colvin*, 813 F.3d 1326, 1329 (10th Cir. 2016). But the Commissioner has not argued

4

that this issue has been waived due to inadequate briefing, and we will consider it on the merits.

"It is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination." *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Further, in formulating his RFC assessment, the ALJ must consider the combined effect of these impairments. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013). There is no indication that Ms. Lauer's alleged headaches are not medically determinable. But the ALJ did not analyze Ms. Lauer's complaint about near-daily migraine headaches at any step of his analysis.

To defend the ALJ's silence on this issue, the Commissioner argues that (1) Ms. Lauer only made occasional or sporadic complaints about headaches; (2) her headaches were related to her neck and back symptoms, which the ALJ considered; and (3) "the ALJ's RFC finding reasonably accounted for limitations stemming from these conditions." Aplee. Br. at 32. We find these arguments unpersuasive.

Although Ms. Lauer made her complaints about headaches on only a few occasions, and in medical records that appear toward the end of the adjudicated period, she complained on several occasions that the alleged headaches occurred on a frequent basis, sometimes several times a week. These headaches appear to have involved additional alleged symptoms separate from those associated with her back and neck problems. The effect of these symptoms may not have been accounted for in the ALJ's RFC assessment.

The Commissioner has essentially asserted a post hoc rationale for affirming the ALJ's decision. But we decline to make findings that were for the ALJ, not a reviewing court, to make. *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008). We therefore remand to the district court, with instructions to remand to the Commissioner for further evaluation of Ms. Lauer's complaint of migraine headaches.

## 2. ALJ's Evaluation of Medical Evidence

An ALJ must consider all medical opinions in the record and discuss the weight he assigns to those opinions. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). He is required to give good reasons in his decision for the weight he assigns to a treating physician's opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

In the district court, Ms. Lauer challenged the sufficiency of the ALJ's evaluation of opinion evidence from her treating physician, Dr. Woolman, and from her physical therapist, Ernie Chavez. Although Ms. Lauer makes some references to Dr. Woolman in her opening brief, she has not renewed her specific district-court argument, which concerned the ALJ's failure to provide any evaluation or weighing of Dr. Woolman's May 2012 opinion, *see* R., Vol. 1 at 649-51; *id.* at 674-75.

Ordinarily, issues inadequately presented in an appellant's opening brief are waived. *See Allman*, 813 F.3d at 1329; *see also Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). But because (1) we are remanding on another issue; (2) Ms. Lauer does refer to Dr. Woolman's opinions in her opening brief, which we

6

construe liberally; (3) Ms. Lauer's district-court arguments on this issue established that the ALJ erred in failing to consider the opinion, and the Commissioner's responsive arguments on this point are unpersuasive, *see* Aplee. Br. at 24 n.11; and (4) it is possible the alleged error will easily be rectified if the ALJ supplies the omitted analysis, we direct that this issue be considered on remand as well. On remand, the ALJ should consider and provide a proper analysis of Dr. Woolman's May 2012 opinion.

That leaves Ms. Lauer's argument concerning Mr. Chavez's evaluation. In February 2014 Mr. Chavez performed a functional capacity evaluation and determined Ms. Lauer could do "sedentary" work. R., Vol. 1 at 464.[3] More particularly, he opined:

> She demonstrates the ability to perform lift/carry at waist level up to 25 pounds rarely and 20 occasionally. Her lifting abilities are most functional between thigh and shoulder heights. She is able to sit and walk on frequent basis, but stairs/static standing, and elevated work are limited to an occasional basis. She is limited in the use of ladders and forward bending to rarely, but has no limitations with bilateral hand coordination, bilateral hand gripping, or pinching. Low level tasks (kneeling, crawling, and crouching) are all limited to rarely.

*Id.*

The ALJ gave this opinion partial weight, noting it was "generally consistent with the medical records and the examination conducted prior to opinion," but "the

---

[3] The district court remarked that "Chavez concluded Plaintiff could perform full-time work on a regular and continuing basis and his opinion does not support disability." R., Vol. 1 at 694 n.3. But the occupations the vocational expert identified at the hearing, later incorporated into the ALJ's decision, were all at the light level, *see id.* at 46, and Chavez had only opined she could do sedentary work.

medical records show that the claimant is limited more to a light level instead of a sedentary level" and she "has also shown occasional limitations in kneeling, crouching, and crawling rather than rarely doing these activities." *Id.* at 70.  In reaching these conclusions the ALJ relied on opinions from reviewing and examining sources concerning Ms. Lauer's abilities.

In district court, Ms. Lauer argued that the reviewing and examining physicians on which the ALJ relied provided their opinions in 2013 and did not have access to some of the probative evidence concerning her conditions that was only available beginning in 2014.  *See id.* at 651-52.  She explained she "did not start complaining of headaches until 2014 and her cervical spine x-ray was not part of the record until 2014." *Id.* at 652.  Therefore, she argued, the ALJ should not have used these opinions to undermine Mr. Chavez's conclusions.  But these complaints of headaches and the x-ray also post-dated Mr. Chavez's February 2014 evaluation, and were therefore not available to him when he provided his opinion.[4]  Their existence and timing does not show that the ALJ was required to give preference to Mr. Chavez's opinion over those of the reviewing and examining physicians, where those opinions differed.

---

[4] Ms. Lauer also mentioned x-rays performed in 2013, R., Vol. 1 at 645, which may be among those she later argued consulting physician Dr. Nelson did not know about, *see id.* at 652.  Although Mr. Chavez referred to x-rays in his report of Ms. Lauer's history, *see id.* at 472, it does not appear he actually reviewed the x-rays.  Thus, his purported greater knowledge of the x-rays does not undermine the ALJ's decision to give greater weight to Dr. Nelson's report than to Mr. Chavez's opinion.

On appeal, Ms. Lauer now also complains that Mr. Chavez only recommended a transitional return to work, with restrictions. *See id.* at 463. She argues "[t]ransitional is not 40 hour week work." Aplt. Opening Br. at 5. Because the Commissioner has addressed this argument, we will consider it. Having done so, we determine Ms. Lauer's interpretation of Mr. Chavez's report is unfounded. On the next page of his report, Mr. Chavez states that his "projections are for 8 hours a day 5 days a week at the levels indicated on the FCE grid." R., Vol. 1 at 464. Ms. Lauer has failed to show the ALJ erred in his evaluation of the medical opinion evidence.

### 3. Other Issues

In addition to the issues we have discussed, Ms. Lauer contends that the ALJ erred in failing to consider the effect of her fibromyalgia on her RFC, and in failing to accept certain testimony from a vocational expert (VE). She did not raise these issues to the district court. They are therefore waived, and we will not consider them. *See Krauser v. Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011) (noting that "our review . . . is limited to the issues the claimant properly preserves in the district court").

### 4. Conclusion

The district court's order affirming the Commissioner's decision is reversed. This case is remanded to the district court with instructions to remand to the ALJ to

properly evaluate Ms. Lauer's complaint of migraine headaches and to provide a proper analysis of Dr. Woolman's May 2012 opinion.

Entered for the Court

Gregory A. Phillips
Circuit Judge